UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:16 CV 20417

PETERBROOKE FRANCHISING OF AMERICA, LLC,

    Plaintiff/Counter-Defendant ,

v.

MIAMI CHOCOLATES, LLC,

    Defendant/Counter-plaintiff,
_____/

## COUNTERCLAIM

Defendant/Counter-Plaintiff, Miami Chocolates, LLC d/b/a Peterbrooke Chocolatier ("Miami Chocolates"), counter-sues the Plaintiff/Counter-Defendant, Peterbrooke Franchising of America, LLC ("PFA"), and states as follows:

### PARTIES, JURISDICTION, AND VENUE

1. This counterclaim includes causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, violation of Florida Unfair and Deceptive Trade Practices Act and declaratory relief.

2. Miami Chocolates is a Florida for-profit corporation authorized to do business in Florida with its principal place of business in Miami-Dade County, Florida.

3. PFA is a Florida for-profit corporation authorized to do business in Florida with its principal place of business in Duval County, Florida.

4. This Court has jurisdiction of the counterclaims pursuant to 28 U.S.C. § 1367.

1

5. Venue is proper in district insofar as the main claims have been filed in this district.

## GENERAL ALLEGATIONS

**The Agreement**

6. Everyone (well, at least most people) love chocolate. So did a woman by the name of Phyllis Geiger. She loved chocolate so much that in 1983 she started a chocolatier business named after her two children, Peter and Brooke – i.e., Peterbrooke.

7. The Peterbrooke concept was to create the experience of a neighborhood chocolatier where the proprietor makes the chocolate on site in the European traditions.

8. In 2005, through an entity called Peterbrooke Franchising, Inc. ("PFI"), Peterbrooke began the process of franchising its chocolatier business, largely in the states of Florida and Georgia.

9. On or about August 24, 2007, Miami Chocolates executed a Franchise Agreement (the "Agreement") with Peterbrooke Franchising, Inc. ("PFI"). A true and correct copy of the Agreement is attached hereto and incorporated herein as Exhibit 1.

10. The purpose of the Agreement was to set forth the terms pursuant to which PFI authorized Miami Chocolates to own and operate a Peterbrooke Chocolatier Shop selling certain Proprietary Products (as that term is defined in the Agreement) using the Peterbrooke trade name, trademarks and systems.

11. At the time, Miami Chocolates was owned by a woman named Sharon Cahoon. In September of 2010, however, Ms. Cahoon sold Miami Chocolates to a couple by the name of Charles and Judy McDonald. PFI approved that sale and the transaction was documented in a

2

Peterbrooke Franchising, Inc. Assignment and Assumption Agreement, a copy of which is attached hereto as Exhibit 2.[1]

12.     Since their purchase of Miami Chocolates in 2010, Mr. and Mrs. McDonald have operated their franchise in a manner consistent with their good faith desire to be a successful, and ethical, franchisee.  Toward that end, and as set forth in more detail below, they have promoted the Peterbrooke brand in Miami, Florida and have made great strides in establishing a well-respected chocolatier shop in the community.

### Transfer of Rights and Obligations Under the Agreement to PFA

13.     On January 11, 2012, PFI sold some of its assets to PFA.

14.     Although section 16.1 of the Agreement requires that, upon a transfer by the franchisor (i.e., PFI) of its rights and obligations under the Agreement to a third party, a notice of that transfer shall be sent to the franchisee with a written statement by the transferor and transferee that the transferee assumes all of the franchisor's obligations under the Agreement, said notice was not provided to Miami Chocolates.

15.     It is doubtful, therefor, whether the Agreement was included in the assets transferred by PFI to PFA and whether PFA has ever actually acquired the rights of PFI under said Agreement.

16.     As further reasons for Miami Chocolates' doubt, certain of PFA's Franchise Disclosure Documents, when compared to a 2011 valuation of PFI,  seem to contradict the position that the Agreement was part of the transfer.

17.     On April 20, 2011, approximately nine months prior to the transfer of assets from PFI to PFA, an independent business appraisal firm valued the assets of PFI.  Attached hereto as

---

[1]     The attached exhibit is an unsigned version of the agreement.  Miami Chocolates cannot currently locate the signed version but will seek same through discovery.

3

Exhibit 3 is an excerpt of the valuation prepared by the firm of Sheldrick, McGehee & Kohler, LLC ("SMK") (the "Appraisal").

18. On page 18 of the Appraisal, SMK set forth its opinion on the liquidation value of PFI and concluded that said value, inclusive of all its assets (which would include the various franchise agreements with the franchisees – including the Agreement with Miami Chocolates), was within a range of $54,367 on the low side and $63,310 on the high side. A copy of the Appraisal is attached hereto as Exhibit 3. No new franchises were added to the Peterbrooke franchising system between the date of the Appraisal and the sale of assets on January 11, 2012 to PFA.

19. On October 2012, PFA, having acquired some of the assets of PFI ten months prior, issued a Franchise Disclosure Document (the "2012 FDD") in connection with its efforts to begin selling new Peterbrooke Chocolatier franchises. Relevant excerpts of the 2012 FDD are attached hereto as Exhibit 4.

20. In the 2012 FDD, PFA stated that "[o]n January 11, 2012, we entered into an Asset Purchase Agreement with [PFI] pursuant to which we purchased a majority of its assets." See 2012 FDD, at 1. Included within that FDD, however, PFA included its balance sheet as of February 10, 2012 (approximately one month after the purchase of the PFI assets) and reflected a total asset base of $10,000 in cash. Nowhere does that balance sheet reflect as an asset of PFA any of the existing franchise agreements, and especially not the Agreement between PFI and Miami Chocolates.

21. Although Miami Chocolates does not have a copy of PFA's Franchise Disclosure Documents for 2013 or 2014, it does have a copy of PFA's Franchise Disclosure Document

dated May 1, 2015 (the "2015 FDD"). Relevant excerpts of the 2015 FDD are attached hereto as Exhibit 5.

22. The first interesting point to note is that, in the 2015 FDD, PFA states that a different company was the entity that acquired PFI's assets. On page 1 of the 2015 FDD, PFA states that "[o]n January 11, 2012, Peterbrooke Acquisition Company, LLC ("PAC") entered into an Asset Purchase Agreement with [PFI] pursuant to which PAC purchased certain assets of PFI."[2]

23. The second interesting point is contained in the audited financial statements for PFA prepared by the firm of Smoak, Davis & Nixon LLP ("SDN") which are attached to the 2015 FDD.

24. In those financial statements, PFA claims to have paid the sum of $350,000 to PFI for the franchise agreements. This figure is wholly inconsistent with the liquidation value for ALL of PFI assets as determined in April of 2011 by SMK ($54,367 to $63,310) and further contradicted by PFA's balance sheet as of February 2012 reflecting total assets of $10,000.

25. In addition, as set forth above, Miami Chocolates did not receive a notice of transfer of PFI's assets, including the Agreement, to Peterbrooke Acquisition Company, LLC.

26. On January 10, 2014, after having received a demand from PFA to change its Point of Sale ("POS") system, Miami Chocolates sent PFA a letter questioning the transfer of PFI's assets and, in particular, whether or not the Agreement was part of the assets transferred. A copy of the January 10, 2014 letter is attached hereto as Exhibit 6. Miami Chocolates noted in that letter that it never received a written notice of the transfer as required under section 16.1 of the Agreement.

---

[2] In the 2012 FDD, PFA stated that it purchased the majority of the assets of PFI while, in the 2015 FDD, PFA states that a different entity (Peterbrooke Acquisition Company, LLC) purchased certain of PFI's assets.

5

27. PFA never directly responded to Miami Chocolates' inquiry regarding the lack of notice of the purported transfer. Instead, on or about May 28, 2014, PFA posted on its on-line bulletin page a statement reflecting that the rights and obligations under the Agreement at issue in this litigation were transferred from PFI to PFA, effective January 11, 2012, and that PFA had assumed all obligations under the Agreement. A copy of the notice is attached hereto as Exhibit 7.

28. The notice, however, which was never actually ever sent to Miami Chocolates, was created more than two years after the supposed transfer and was not signed by either PFA or PFI. Additionally, when the notice was issued, PFI was already a dissolved corporation.

29. As such, Miami Chocolates is in doubt as to whether its Agreement with PFI formed part of the assets sold by PFI to PFA.

**Miami Chocolates' Performance under the Agreement**

30. Miami Chocolates has always performed under the Agreement and fulfilled its obligations as a Peterbrooke franchisee. Indeed, Miami Chocolates has been a role model of a franchisee.

31. As a franchisee within the Peterbrooke system (assuming for the moment that the Agreement was in fact transferred to PFA as opposed to being abandoned by PFI), Miami Chocolates has been audited on multiple occasions.

32. Attached hereto as Composite Exhibit 8 are several of the audit results prepared by PFA reflecting high grade marks achieved by Miami Chocolates in connection with those audits. The audits cover items such as store appearance and cleanliness, packaging and branding, compliance and critical issue, and guest services and employee evaluations. Also contained within Composite Exhibit 8 is a summary of notes written in a guest book by guests

who have visited Miami Chocolates. Amongst the notes are endearing comments by customers such as United States Supreme Court Justice Sonia Sotomayor and Gloria Estefan.

33. The same cannot be said, however, for PFA's performance under the Agreement (or even PFI's, for that matter). Indeed, PFA has systematically breached the Agreement by failing to provide the guidance, assistance and advertising contemplated by the Agreement.

34. Moreover, contrary to the terms of the Agreement, PFA has not sold high-quality chocolates to Miami Chocolates that meet the Peterbrooke standards. For example, Miami Chocolates has received a delivery of chocolates containing moths and on a separate occasion has found glass chips in toffee pieces, and has experienced unreasonable delays in receiving product ordered from PFA.

35. Attached hereto as Composite Exhibit 9 are a series of communications between Miami Chocolates and PFA (or in some instances, PFI), as well as some communications from other franchisees, documenting problems with obtaining suitable products for sale.

36. Miami Chocolates has attempted to address these issues (as well as others) with PFA without success. By way of example, attached hereto as Exhibit 10 is an agenda for a meeting held between the owners of Miami Chocolates (i.e., Mr. and Mrs. McDonald) and the key management personnel for PFA.[3]

37. By way of further example, attached hereto as Composite Exhibit 11 is an agenda for a meeting held by PFA on April 8 and 9, 2014 with various franchisees, together with a written statement delivered to PFA by Miami Chocolates during that meeting addressing various concerns.

---

3   For the reasons set forth below in the paragraphs concerning the POS system, it is interesting to note that one of the points that Miami Chocolates found necessary to address during the February 17, 2012 meeting was the then-existing POS system.

38. None of Miami Chocolates' concerns, which are shared by many of the other franchisees, have ever been properly addressed by PFA or corrected.

**The POS System and the Termination**

39. It has become apparent that PFA has no desire to assist Miami Chocolates in its efforts to succeed (and the same is true for many of the other franchisees). Rather than assist Miami Chocolates, PFA has done whatever it can to place obstacles in Miami Chocolates' attempts to grow its business and turn a profit.

40. On or about November 4, 2013, PFA, acting as if it is Miami Chocolates' franchisor, requested that Miami Chocolates change its point-of-sale ("POS") system to a Micros Symphony System (the "Micros System"). A copy of the November 4, 2013 letter is attached hereto as Exhibit 12.

41. In response, on or about January 10, 2014, Miami Chocolates sent correspondence to PFA in which, in addition to questioning whether its Agreement with PFI was transferred to PFA, Miami Chocolates objected to changing its POS system to the Micros System. The basis for its objection was its belief that the Micros System was not appropriate for a chocolatier shop and did not meet the Peterbrooke specifications. See Exhibit 6.

42. After making its objection to change to the Micros System, PFA never demanded that Miami Chocolates change to the Micros System and Miami Chocolates never implemented the Micros System.

43. For 21 months following Miami Chocolate's objection to change its POS system to the Micros System, Miami Chocolate did not receive any further demands to change its POS system—until October 14, 2015.

8

44. As a result, Miami Chocolates implemented a new POS system using the Square system, together with a now-required chip reader, and that system has been serving the needs of Miami Chocolates quite well.

45. On October 14, 2015, Miami Chocolates received a demand from PFA to change its POS system and implement an NCR Silver POS system ("NCR System") and Cimplebox, a system that is different from the prior POS systems that PFA was demanding its franchisees to change over to and a system that is still not compliant with industry standards insofar as it is lacking the now-required chip readers. A copy of that correspondence is attached hereto as Exhibit 13.

46. On November 13, 2015, Miami Chocolates once again questioned PFA's acquisition of PFI's assets and PFA's rights under the Agreement, and objected to changing its POS system to the NCR System and Cimplebox on the basis that these systems were inadequate and would not be beneficial to Miami Chocolates. A copy of the November 13, 2015 correspondence is attached hereto as Exhibit 14.

47. Moreover, Miami Chocolates objected to implementing the NCR System and Cimplebox because PFA previously demanded its franchisees to change its POS system twice—first to the Micros System, then to an unknown system because the initial software was inadequate—and both systems had to be replaced at a considerable expense to the franchisees.

48. On December 2, 2015, PFA once again demanded that Miami Chocolates implement the new POS system within thirty (30) days. A copy of that correspondence is attached hereto as Exhibit 15. PFA failed, however, to demonstrate that the request was beneficial to Miami Chocolates or consistent with PFA specifications. In fact, PFA has never

updated the specifications initially established by PFI, yet it has demanded that its franchisees nevertheless change their POS systems, not once, not twice, but now three times.

49. Because of the foregoing, Miami Chocolates declined to implement a POS system that is inadequate. Miami Chocolates also notes that the lack of a chip reader is not in the best interest of Miami Chocolates' customers. For that reason, when Miami Chocolates implemented the Square POS system, it made sure that the system came equipped with a chip reader.

50. On January 28, 2016, PFA sent Miami Chocolates notification that it was terminating the Agreement, effective January 29, 2016. A copy of the January 28, 2016 letter is attached hereto as Exhibit 16. Interestingly, the termination letter came two weeks prior to Valentine's Day, one of the busiest days for any chocolatier.

51. For the reasons set forth below in Count II, the termination was improper.

52. Based on the above, Miami Chocolates has incurred damages in the form of lost profits and loss of goodwill.

53. All conditions precedent to the institution of this action have occurred or have been performed or waived.

54. Miami-Chocolates has retained the undersigned law firm to enforce its rights in this action and has obligated itself to pay said attorneys reasonable attorneys' fees and costs.

## COUNT I – BREACH OF CONTRACT

55. Miami Chocolates realleges paragraphs 1 through 54 above.

56. The Agreement represents a valid and enforceable contract between the parties.

57. Article 11.3.1 of the Franchise Agreement provides that the "reputation and goodwill of Peterbrooke Chocolatier Shops is based upon and can be maintained only by the sale of distinctive, high quality good products and the presentation, packaging and service of such

products in an efficient and appealing manner." Further, Article 11.2 of the Franchise Agreement requires the Franchisee to "offer for sale all Proprietary Products and related products that We from time to time prescribe . . .." Finally, Article 11.3 addresses the "approved products, distributors and suppliers" and states "You agree that the Shop will (a) purchase the Proprietary.

58. In turn, Mackoul Distributors, Inc. ("Mackoul") has been named as the Designated Supplier of the proprietary and other food products (the "Proprietary Products").

59. Miami Chocolates has experienced continuous quality control issues with the Proprietary Products that it is compelled to order from Mackoul. For example, Miami Chocolates has received delivery of chocolates containing moths and has found glass pieces in toffee.

60. PFA has breached the Agreement by not providing Miami Chocolates with the high-quality products contemplated by the Agreement.

61. As a result, Miami Chocolates has borne the costs of problems associated with receiving Proprietary Products which are substantially below the Company's own standards which has damaged Miami Chocolates by virtue of lost sales because it cannot sell inferior product to its customers or to bear the costs associated with bringing the Proprietary Products up to appropriate standards.

62. Furthermore, to the extent the brand becomes associated with poor quality products, the value of Miami Chocolates' franchise is significantly reduced.

63. PFA further breached the Agreement by failing to provide Miami Chocolates with the training, guidance and assistance contemplated by the Agreement under Articles 5.2 and 5.3.

64. For example, pursuant to the Agreement, the Franchisor is required to provide services in the following areas as part of the Franchisor's obligation to provide training, guidance and assistance:

    a. Regularly update the recipe book;

    b. Regularly update the operations manual;

    c. Advise on Media Buys;

    d. Provide adequate IT support;

    e. Establish a Public Relations Strategy;

    f. Provide a field representative who makes regular visits to help build the Shop;

    g. Establish a POS system which allows Miami Chocolates and other Franchisees to track their inventory; and

    h. Provide effective and timely Graphic Design Services.

65. Contrary to the terms of Articles 5.2 and 5.3 of the Agreement, there has been no new recipe book published since May 30, 2010, the operations manual has not been updated since 2007, the IT support is inadequate as it is unavailable during normal operating hours, there is no discernible public relations strategy to enhance the Peterbrooke brand generally, and the graphic design services are inadequate.

66. As a result, PFA has breached the Agreement by not providing material services in these areas in violation of its obligations pursuant to Articles 5.2 and 5.3 of the Agreement.

67. Miami Chocolates has suffered damages as a result of PFA's breach of Articles 5.2 and 5.3 by virtue of lost sales and profits.

WHEREFORE, Miami Chocolates demands judgment in its favor and against PFA for damages, pre-judgment and post-judgment interest, court costs, attorneys' fees, and such additional relief that the Court deems appropriate.

## COUNT II – BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

68. Miami Chocolates realleges paragraphs 1 through 54 above.

69. This is an action by Miami Chocolates against PFA for breach of the implied covenant of good faith and fair dealing.

70. As alleged more fully above, Miami Chocolates entered into the Agreement with PFA's predecessor in interest.

71. Miami Chocolates has paid all the royalties due under the Agreement and has otherwise fully performed its obligations under the terms of the Agreement.

72. PFA has breached the covenant of good faith and fair dealing by requiring Miami Chocolates to change its POS system at Miami Chocolate's sole expense to a system that is inadequate.

73. Upon information and belief, PFA has previously demanded its franchisees to implement two other POS systems that have proven inadequate and had to be replaced at great expense to the individual franchises.

74. On the other hand, Miami Chocolates has implemented a POS system that is beneficial to Miami Chocolates business and efficiently and effectively has implemented a POS system that uses a chip reader.

75. Further, Miami Chocolates has offered to provide PFA with its login and password so that PFA may access and monitor Miami Chocolates' sales activity. Miami

Chocolates has also reported all sales to PFA and never has PFA claimed, nor had reason to claim, that Miami Chocolates underreported revenue.

76.     Miami Chocolates has declined to implement the third new POS system demanded by PFA in good faith on the basis that the proposed new POS systems will ultimately prove to be inadequate and Miami Chocolates will suffer significant monetary harm.

77.     PFA has breached the covenant of good faith and fair dealing by not completing any testing that confirms that the POS systems it has demanded its franchisees to implement are beneficial to the operation of the franchisees' business.

78.     PFA's right to require Miami Chocolates to changes its POS system under the Agreement is not unlimited.  Specifically, section 4.6.4 states, in pertinent part: "**Following Our testing and determination that it will prove beneficial to You**, You agree to install at Your own expense such additions, changes, modifications, substitutions and/or replacements to Your hardware, software . . .."

79.     PFA's demand that Miami Chocolates change its POS system was a breach of the implied covenant of good faith and fair dealing because PFA's demand was arbitrary and unreasonable, and there is no indication that the testing contemplated by the Agreement has been performed to determine that the new POS system will be beneficial to Miami Chocolates. Moreover, Miami Chocolates believes that its decision with respect to the POS is consistent with the obligations contained in section 11.7 of the Agreement regarding compliance with laws, insofar as Miami Chocolates' system contains a now-required chip reader.

80.     Additionally, Miami Chocolates notes that PFA is a member of the International Franchise Association (the "IFA"), an organization that promotes franchising worldwide.  The IFA has a written Code of Ethics, a copy of which is attached hereto as Exhibit 17.  Within that

14

Code of Ethics is a statement that provides that "IFA's members are committed to showing respect and consideration for each other and to those with whom they do business." PFA's actions toward Miami Chocolates falls far short of showing respect and consideration, and is a clear violation of the duty of good faith and fair dealing.

WHEREFORE, Miami Chocolates demands judgment in its favor and against PFA for damages, pre-judgment and post-judgment interest, court costs, attorneys' fees, and such additional relief that the Court deems appropriate.

### COUNT III – VIOLATION OF FLORIDA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT

81. Miami Chocolates realleges paragraphs 1 through 54 above.

82. This is an action for violation of the Florida Unfair and Deceptive Trade Practices Act, Florida Statute section 501.203(3).

83. PFA has unlawfully and intentionally engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of a trade or commerce in violation of Florida Statute section 501.204 as follows:

   a. Miami Chocolates has been forced to advertise for the Corporate Owned Shops;

   b. Miami Chocolates has been forced to pay for its competitor's advertising;

   c. Miami Chocolates has been forced to comply with policies which lower or completely eliminate the costs for the Corporate Owned Shops at the expense of Miami Chocolates;

   d. Miami Chocolates has been forced to comply with standards which the Corporate Owned Shops do not have to comply with; and

  e. Miami Chocolates has been forced to compete with the wrongfully subsidized Corporate Owned Shops.

84. As a direct, proximate and foreseeable result of PFA's violation of the Florida Unfair and Deceptive Trade Practices Act, Miami Chocolate has suffered and continues to suffer substantial actual damages.

85. Miami Chocolates is entitled to attorneys' fees pursuant to Florida Statutes section 501.2105.

WHEREFORE, Miami Chocolates respectfully requests that this Court enter judgment in its favor and against PFA for all damages incurred as a result of the PFA's violation of Florida Statute section 501.201 *et seq.*, an award o attorneys' fees and costs and such other and further relief as is appropriate.

### COUNT IV—DECLARATORY RELIEF

86. Miami Chocolates realleges paragraphs 1 through 54 above.

87. This count seeks declaratory relief pursuant to chapter 86 and section 563.022(18)(d) of the Florida Statutes.

88. For the reasons set forth above in paragraphs 13 through 29, Miami Chocolates is in doubt as to whether PFA ever actually acquired the franchise agreements (including the Agreement) or whether same was abandoned by PFI.

89. A bona fide dispute exists between Miami Chocolate and PFA arising out of the events alleged above.

90. Specifically, Miami Chocolates has justiciable questions as to whether Miami Chocolates is obligated in any manner to PFA.

91. A bona fide, actual, present need or this declaration exists.

WHEREFORE, Miami Chocolates respectfully demands judgment declaring the rights of the parties pursuant to the Agreement as it relates to whether the Agreement was ever actually transferred to PFA , together with such other and further relief as the Court deems just, equitable and proper.  In the event that the Agreement was not actually transferred to PFA, then Miami Chocolates demands return of all monies paid by Miami Chocolates to PFA.

## COUNT V—DECLARATORY RELIEF

92. Miami Chocolates realleges paragraphs 1 through 54 above.

93. This count seeks declaratory relief pursuant to chapter 86 and section 563.022(18)(d) of the Florida Statutes.

94. Article 19 of the Agreement entitled "Rights and Obligations Upon Termination or Expiration of the Agreement" includes a covenant not to compete, terms regarding the purchase of the assets of the Shop, and liquidated damages in the event that the Agreement is terminated with cause.

95. A bona fide dispute exists between Miami Chocolate and PFA arising out of the events alleged above, assuming of course that the Court determines that the Agreement was in fact transferred to PFA.

96. Specifically, Miami Chocolates has justiciable questions as to whether Miami Chocolates has breached the Agreement such as to give rise to good cause under Article 19 to terminate the Agreement.  Alternatively, if there is a finding that Miami Chocolates has not breached the Agreement and PFA has terminated the Agreement without cause, Article 19 will not apply and Miami Chocolates will neither have to pay liquidated damages, will not be subject to the non-compete clause, and PFA will have no right to purchase the assets of Miami Chocolates.

97. A bona fide, actual, present need or this declaration exists.

WHEREFORE, Miami Chocolates respectfully demands judgment declaring the rights of the parties pursuant to the Agreement as it relates to whether good cause exists or the termination by PFA of the Agreement, together with such other and further relief as the Court deems just, equitable and proper.

DATED: February 5, 2016

        **GRAYROBINSON, P.A.**
        333 S.E. 2nd Ave.
        Suite 3200
        Miami, FL 33131
        juan.martinez@gray-robinson.com
        Telephone:    (305) 416-6880
        Facsimile:    (305) 416-6887


        By:   /s/ *Juan C. Martinez*
            Juan C. Martinez
            Florida Bar No.: 009024
            Juan.martinez@gray-robinson.com