UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:16 CV 20417-COOKE/TORRES

PETERBROOKE FRANCHISING OF
AMERICA, LLC,

  Plaintiff,

v.

MIAMI CHOCOLATES, LLC,
CHARLES MCDONALD, and
JUDY MCDONALD,

  Defendants.

_____/

## AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

  Plaintiff, PETERBROOKE FRANCHISING OF AMERICA, LLC ("PFA"), by and through undersigned counsel, hereby sues Defendants, MIAMI CHOCOLATES, LLC, CHARLES MCDONALD, and JUDY MCDONALD (collectively, "Defendants"), and alleges as follows:

### NATURE OF THE ACTION

  1. This action arises out of Defendants' unauthorized use of PFA's valuable trademark in connection with Defendants' unlawful operation of a chocolate shop located in Florida as a Peterbrooke Shop, as well as for Lanham Act damages. Pursuant to this action, Plaintiff seeks injunctive relief and monetary damages against Defendants for infringement, unfair competition, and breach of a Franchise Agreement ("Agreement") between Defendant Miami Chocolates and PFA.

### THE PARTIES

  2. Plaintiff PFA is a Florida Limited Liability Company with its principal place of business in Jacksonville, Florida.

3.      Defendant Miami Chocolates, LLC ("Miami Chocolates") is a limited liability company organized under the laws of the State of Florida with its principal place of business in Miami-Dade County, Florida.

4.      Defendant Charles McDonald is an individual over the age of eighteen (18), is *sui juris* and resides in Miami-Dade County, Florida. Defendant Charles McDonald is an owner and manager of Miami Chocolates.

5.      Defendant Judy McDonald is an individual over the age of eighteen (18), is *sui juris* and resides in Miami-Dade County, Florida. Defendant Judy McDonald is an owner and manager of Miami Chocolates.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this action pursuant to 15 U.S.C.A. § 1121, 28 U.S.C.A. § 1331, § 1337(a), and § 1338(b) arising from Defendants' violations of the Lanham Act, 15 U.S.C.A. § 1114(1)(a) and § 1125.

7.      This Court has supplemental jurisdiction over the related common law claims in this action pursuant to 28 U.S.C.A. § 1338 and 1367(a).

8.      Venue is proper in the Southern District of Florida pursuant to 28 U.S.C.A. § 1391(b)(2) because the acts giving rise to this action occurred in Miami-Dade County, Florida.

9.      All conditions precedent to the institution of this action have been satisfied, discharged, excused, and/or waived.

## BACKGROUND

### The Peterbrooke Mark

10.      Peterbrooke Idea Company, LLC owns the Peterbrooke Mark pursuant to an Asset Purchase Agreement dated January 11, 2012. Pursuant to a license agreement with Peterbrooke Idea Company, LLC, PFA possesses the right to use the Peterbrooke Mark

worldwide to operate chocolate stores and to grant franchises and licenses to third parties to do the same. PFA also possesses the right to pursue legal action to against third parties, including former franchisees, for infringement and unfair competition.

11.     PFA has extensively employed, advertised, and publicized throughout the Southeastern United States a certain distinctive symbol as a trademark (the "Peterbrooke Mark"). The Peterbrooke Mark has been registered with the United States Patent and Trademark Office under the Registration Number 1853746 since September 13, 1994.

12.     PFA operates and franchises Peterbrooke Chocolatier Shops using the Peterbrooke Mark on signs, stores, inventory, promotional items, and in advertising.

13.     The Peterbrooke Mark's registration is currently in full force and effect, and Peterbrooke Idea Company, LLC has given notice of this to the public as provided in 15 U.S.C. §1111.

14.     On August 24, 2007, Defendant Miami Chocolates entered into the Agreement with Peterbrooke Franchising, Inc., for the right to operate a Peterbrooke Chocolatier Shop in Miami, Florida. A copy of the Agreement is annexed hereto as Exhibit "A." On January 11, 2012, all of Peterbrooke Franchising, Inc.'s rights and responsibilities under the Agreement were transferred to PFA.

15.     Pursuant to the Agreement, PFA granted Miami Chocolates a limited license and authority to use and display the Peterbrooke Mark, but only in such manner, and at such locations and times, as were expressly authorized by PFA. In no event was Miami Chocolates or its owners or affiliates authorized to use the Peterbrooke Mark after the termination of its franchise. Such unauthorized use was and is expressly prohibited under the terms of the Agreement.

16.     PFA's products bearing the Peterbrooke Mark are offered and sold in interstate commerce.

17.     PFA has spent significant funds promoting and advertising its Shops in the Southeastern United States. This substantial investment has resulted in valuable goodwill for the Peterbrooke Mark and for the Shops bearing it. The products associated with the Peterbrooke Mark are understood by consumers to be produced, marketed, sponsored, supplied by and/or affiliated with PFA.

### Breach and Termination of the Franchise Agreement

18.     PFA maintains comprehensive operating procedures for all PFA franchisees in order to ensure uniformity, high quality standards, smooth operation of the franchise system, and to protect the image of Peterbrooke Shops. Section 4.6 of the Agreement describes these specifications and procedures and clearly states that Miami Chocolates, like all franchisees, is responsible for adherence to them. Adherence to the procedures is an essential condition of the Agreement.

19.     Section 18.1.1 of the Agreement provides that Miami Chocolates' failure to comply with any of its provisions is a default of the Agreement, and that if such a default occurs and Miami Chocolates fails to cure the default within (15) days after receiving notice, PFA may terminate the Agreement.

20.     Section 4.6.2 specifically states:

When so instructed by Us, You shall procure and install for the Shop such computerized cash register polling packages, a POS register station, designated accounting software and software options, associated computer hardware, required dedicated telephone and power lines, modem(s) for polling purposes, printer(s), and other related accessories or peripheral equipment, and bar coding equipment as We specify in our manual and otherwise. You shall provide any assistance required by Us to bring such system on-line with Our system at the earliest possible time and You expressly agree that We shall thereafter have the free and unfettered right to retrieve such data and information from Your system as We, in Our sole and exclusive discretion, deem necessary or appropriate. The cost of such retrieval shall be borne by Us. You shall bear the sole cost of the foregoing items to be installed or purchased and activities to be accomplished by You and the delivery and installation cost of all hardware and software.

Agreement, Section 4.6.2.

4

21.     On October 14, 2015, PFA sent notice to Miami Chocolates that conversion to the NCR Silver POS system and Cimplebox software was required to be implemented within thirty (30) days. A copy of this notice is attached as Exhibit B.

22.     On November 13, 2015, Miami Chocolates replied through counsel that it had no intention of complying with section 4.6.2 of the Agreement, and refused to install the POS system and software.

23.     Miami Chocolates' use of equipment not approved by PFA and failure to comply with PFA's requirements for standards of uniformity of operation constitute material defaults of the Agreement.

24.     On December 2, 2015, PFA sent a Notice of Default to Miami Chocolates for its failure to comply with section 4.6.2 of the Agreement.

25.     On December 31, 2015, Miami Chocolates' counsel sent another letter to PFA confirming that it maintained its refusal to comply with the Agreement.

26.     On January 28, 2015, PFA sent a Notice of Termination to Miami Chocolates based on its failure to comply with section 4.6.2 of the Agreement.

27.     Termination of the Agreement was effective as of January 29, 2016.

**Post-Termination Obligations**

28.     Section 19 of the Agreement contains provisions that set forth the rights and obligations of the parties in the event of termination. Specifically, pursuant to Section 19.2, Miami Chocolates and its owners are prohibited from identifying themselves as current or former Peterbrooke franchisees, from using any of PFA's trade secrets, promotional materials, the Peterbrooke Mark, or any mark that is confusingly similar. Miami Chocolates and its owners were required, upon termination, to immediately remove or change the signs on the Shop in order to effectively distinguish their premises from its former appearance and from any association with PFA. Miami Chocolates and its owners were also required to take

5

measures to transfer telephone numbers and telephone directory listings associated with the Peterbrooke Mark to PFA.

29.    Section 19.4 of the Agreement contains a non-competition covenant prohibiting Miami Chocolates and its owners from directly or indirectly operating, or holding any interest in, a competing business within twenty-five (25) miles of their Shop or any Peterbrooke Chocolatier Shop.

30.    Despite the post-termination provisions, Defendants continue to hold themselves out to the public as operating a genuine and authorized Peterbrooke Chocolatier Shop by continuing to use the Peterbrooke Mark subsequent to termination of the Agreement. In so doing, Defendants infringed upon the Peterbrooke Mark and breached their explicit post-termination obligations under the Agreement.

31.    Defendants Charles McDonald and Judy McDonald personally and blatantly infringed on Peterbrooke's Marks following the termination of the franchise relationship. In particular, Charles McDonald and Judy McDonald continued to utilize the Peterbrooke Mark and signage and continued to sell products under the Peterbrooke name for several months after the Agreement was terminated.

32.    Defendants' post-termination use and display of the Peterbrooke Mark and/or any items associated with the Peterbrooke brand at their former Peterbrooke Shop was without PFA's license or consent, and has caused and continues to cause mistake, confusion, or deception in the minds of the public as to the source, affiliation, and sponsorship of Defendants' products. Defendants' unlawful use of the Peterbrooke Mark deceives customers into concluding that Defendants' products are made or supplied by PFA, were prepared under PFA's supervision, are sponsored and endorsed by PFA, and bear the Peterbrooke Mark pursuant to PFA's authority and permission. Such impressions are calculated to, and will

have the effect of, misleading customers in their purchasing decisions, thus unfairly capitalizing on PFA's goodwill, reputation, and appeal.

33.     By virtue of its termination of the Agreement, PFA is unable to control the nature and quality of the products that Defendants provide at their Shop, causing irreparable injury to PFA's reputation and goodwill. Defendants must be immediately enjoined from their continuing and wrongful use of the Peterbrooke Mark.

34.     Defendants' continued use of the Peterbrooke Mark has also caused a diversion of sales from legitimate PFA Shops, the resulting economic injury of which is significant and incalculable.

**LEGAL CAUSES OF ACTION**

**COUNT I**
**LANHAM ACT INFRINGEMENT**
**(Against all Defendants)**

35.     PFA re-alleges all of the preceding paragraphs as if fully set forth herein.

36.     Defendants' acts constitute infringement of PFA's registered trademark in violation of the Lanham Act, 15 U.S.C. § 1114.

**COUNT II**
**LANHAM ACT FALSE DESIGNATIONS**
**(Against all Defendants)**

37.     PFA re-alleges and incorporates all of the preceding paragraphs as if fully set forth herein.

38.     Defendants' acts constitute false designations of origin in violation of the Lanham Act, 15 U.S.C. § 1125(a).

## COUNT III
## COMMON LAW TRADEMARK INFRINGEMENT
### (Against all Defendants)

39.     PFA re-alleges and incorporates all of the preceding paragraphs as if fully set forth herein.

40.     Defendants' acts constitute unlawful trademark infringement under the common law.

## COUNT IV
## COMMON LAW UNFAIR COMPETITION
### (Against all Defendants)

41.     PFA re-alleges and incorporates all of the preceding paragraphs as if fully set forth herein.

42.     Defendants' acts constitute unfair competition under the common law.

## COUNT IV
## BREACH OF THE FRANCHISE AGREEMENT
### (Against Defendant Miami Chocolates, LLC)

43.     PFA re-alleges and incorporates all of the preceding paragraphs as if fully set forth herein.

44.     Miami Chocolates refused to install the NCR Silver POS system and Cimplebox software as required by the Agreement.

45.     PFA made repeated demands for Miami Chocolates to comply with the Agreement.

46.     Miami Chocolates' refusal to install the NCR Silver POS system and Cimplebox software is a breach of the Agreement.

47.     Miami Chocolates' breach of the Agreement has directly and proximately caused loss and damage to PFA.

48.     Defendants' operation of its Shop and use of the Peterbrooke Mark after the termination of the Agreement is a material breach of their post-termination obligations, including the non-competition covenant, under the Agreement.

49.     Defendants' breaches of the Agreement have directly and proximately caused loss and damage to PFA.

**WHEREFORE,** Plaintiff PFA seeks judgment from this Court as follows:

1.      For preliminary and permanent injunctions enjoining Defendants and all persons acting on their behalf, in concert with, or under their control, from:

    a.  Selling, advertising, displaying, or promoting any product or service bearing any of the Peterbrooke Mark, or any colorable imitation thereof at its Shop or anywhere else;

    b.  Displaying or using any of the Peterbrooke Mark to advertise or promote the sale of, or to identify, its Shop, or any product or service provided therein; and

    c.  Making any statement or representation, or performing any act, likely to lead members of the public to believe that Defendant, its shop, and the products provided therein, are in any manner, directly or indirectly, associated, affiliated, or connected with, or licensed, sponsored, authorized, or approved by PFA.

2.      For preliminary and permanent injunctions directing Defendants and all persons acting on their behalf, in concert with, or under their control, to:

    a.  Recall and deliver to PFA all signs, labels, packaging, advertising, promotional, display, and point-of-purchase materials which bear, or make reference to, the Peterbrooke Mark or any colorable imitation of it;

    b.  Take all steps necessary to transfer all telephone numbers and telephone directory listings associated with the Peterbrooke Mark to PFA;

      c.   Allow PFA, at a reasonable time, to enter the premises of the Shop and make whatever changes, including removal of tangible assets, that are necessary to distinguish the premises from their appearance as a Peterbrooke Shop, and;

      d.   Account and pay over to PFA all gains, profits, and advantages derived by Defendant from any trademark and service mark infringement, breach of contract, and unfair competition to the full extent provided for by the Lanham Act, 15 U.S.C.A. § 1117 and the Agreement, Section 19.7.

3.     For money damages, plus treble damages for injuries sustained by PFA by reason of Defendants' trademark infringement and unfair competition pursuant to the Lanham Act, 15 U.S.C.A. § 1117;

4.     For punitive damages because of the willful nature of Defendants' actions;

5.     For pre-judgment interest and PFA's reasonable attorney's fees and costs incurred in protecting its rights in this action in accordance with the terms of the Agreement, and, because of the willful nature of the infringement pursuant to the Lanham Act, 15 U.S.C.A. § 1117.

6.     For liquidated damages, attorney's fees and costs against Defendants due to their breach of the Agreement;

7.     For an order enjoining Defendants and their affiliates from operating a chocolate shop within a 25-mile radius of its Shop or any Peterbrooke Chocolatier Shop for a 2-year period;

8.     For an order directing Defendants to file with the Court, and to serve on PFA's counsel within ten days after service of any injunction or order issued herein, or within such a reasonable time as the Court shall direct, reports, in writing and under oath, setting forth in detail the manner in which Defendants have complied with such injunction or order; and

9.     For all such other relief as this Court may deem just and proper.

Respectfully submitted,

**ZARCO EINHORN SALKOWSKI & BRITO, P.A.**
*Counsel for Plaintiff*
Miami Tower
100 S.E. 2nd Street, 27th Floor
Miami, Florida 33131
Telephone: (305) 374-5418
Facsimile: (305) 374-5428

By: /s/ Robert M. Einhorn

> **ROBERT M. EINHORN – FBN 858188**
> E-mail: reinhorn@zarcolaw.com
> **ALAINA SIMINOVSKY – FBN 70644**
> E-mail: asiminovsky@zarcolaw.com
> **MELISSA I. SOFTNESS – FBN 98786**
> E-mail: msoftness@zarcolaw.com
> Secondary E-mail: acoro@zarcolaw.com
> Tertiary E-mail: eservice@zarcolaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 23, 2016, the foregoing document is being served this day on counsel for Defendant, Juan Martinez, Gary Robinson, P.A., 333 SE 2nd Avenue, Suite 3200, Miami, FL 33131, via the Court's ECF system.

By: /s/  Robert M. Einhorn
**ROBERT M. EINHORN**

11